## UNITED MINE WORKERS OF AMERICA, INTERNATIONAL UNION, Petitioner,

v.

## MINE SAFETY AND HEALTH ADMINISTRATION, United States Department of Labor and William J. Tattersall, Assistant Secretary of Labor for Mine Safety and Health, United States Department of Labor, Respondents,

### Southern Ohio Coal Company, Intervenor.

### No. 90–1403.

United States Court of Appeals, District of Columbia Circuit.

Argued March 11, 1991.

Decided April 2, 1991.

Michael Dinnerstein, Washington, D.C., with whom Robert H. Stropp, Jr., Birmingham, Ala., was on the brief, for petitioner.

Jerald S. Feingold, Attorney, Dept. of Labor, with whom Dennis D. Clark, Washington, D.C., Counsel, Appellate Litigation, Dept. of Labor, was on the brief, for respondents.

W. Henry Lawrence, IV, with whom Brent O. Burton, Clarksburg, W.Va., was on the brief, for intervenor.

Before EDWARDS, WILLIAMS and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The petitioner, International Union, United Mine Workers of America ("UMWA" or "Union"), challenges an order of the respondent, Assistant Secretary of Labor for Mine Safety and Health ("Assistant Secretary"), exempting Southern Ohio Coal Company's "Martinka No. 1 Mine" from a regulation governing the flow of air through mines. This is another in a series of cases in which the Assistant Secretary has granted modifications of the air-flow regulation on the condition that the petitioning coal company install carbon monoxide detectors

to protect the safety of miners. *See International Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 924 F.2d 340 (D.C.Cir.1991) (*"Quarto"*); *International Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 920 F.2d 960 (D.C.Cir.1990) (*"Emerald II"*). We reach the same result here as in our prior cases, leaving the Assistant Secretary's order in place but remanding for more fully reasoned decisionmaking.

## I. BACKGROUND

As is common in the industry, the Martinka No. 1 Mine utilizes a four-entry underground mining system. Coal is transported from the mine to the surface by conveyor belt through "belt" or "belt haulage" entries. "Intake" and "return" entries introduce fresh air into the mine and then return the air to the surface. Finally, "track" entries carry miners and materials into and out of the mine. *See Decision and Order Granting Petition for Modification,* Docket No. 87–MSA–9, at 4 (June 11, 1990) (*"Final Decision"*), *reprinted in* Joint Appendix ("J.A.") 231.

Because of dangers associated with conveyor belts and belt entry air, current Mine Safety and Health Administration ("MSHA") regulations require the physical separation of belt entries from the "face" of the mine, where miners work to extract coal. In particular, belt entries must be ventilated independently from intake and return entries:

> the entries used as intake and return air courses shall be separated from belt haulage entries, and each operator of such mine shall limit the velocity of the air coursed through belt haulage entries to the amount necessary to provide an adequate supply of oxygen in such entries, and to insure that the air therein shall contain less than 1.0 volume per centum of methane, and such air shall not be used to ventilate active working places.

30 C.F.R. § 75.326 (1990). This standard is the same as that established by section 303(y)(1) of the Federal Mine Safety and Health Act of 1977 ("Mine Safety Act"), 30 U.S.C. § 863(y)(1) (1988).

For years, Southern Ohio Coal Company ("SOCCO") has experienced difficulty in complying with the provisions of section 75.326 at its Martinka No. 1 Mine. *See Final Decision* at 12–13, *reprinted in* J.A. 239–40. Its system for ventilating belt entries involved routing of belt air to return entries through a pipe vent, and diversion of belt air from the mine face by means of a "check curtain." In practice, this system posed problems because much of the belt air leaked through to the face of the mine. *See id.*

In November 1986, SOCCO began installation of a carbon monoxide ("CO") monitoring system designed to detect fire in its incipient stages. In August 1986, pursuant to section 101(c) of the Mine Safety Act, 30 U.S.C. § 811(c) (1988), SOCCO petitioned for a modification of section 75.326 as applied to the Martinka No. 1 Mine. *See* J.A. 9–10. Most importantly, SOCCO sought permission to use its belt entries as intake entries, relying in large part on the countervailing fire protection offered by its new CO detector system. *See id.*

In 1987, MSHA issued a favorable proposed decision on SOCCO's petition. *See* Proposed Decision and Order, Docket No. M–86–164–C (June 19, 1987), *reprinted in* J.A. 25. On appeal by the Union, a Department of Labor administrative law judge affirmed the MSHA decision, finding that the alternative safety method proposed by SOCCO would at all times guarantee no less than the same measure of protection afforded by section 75.326. *See* Decision and Order Granting Petition for Modification, Docket No. M–86–164–C (Apr. 27, 1989), *reprinted in* J.A. 167. The Union appealed again, and the Assistant Secretary issued a final decision granting SOCCO's petition for modification. *See Final Decision, reprinted in* J.A. 228.

## II. ANALYSIS

### A.

In relevant part, section 101(c) of the Mine Safety Act authorizes modification of

a safety standard at a particular mine when it is determined

> that an *alternative method of achieving the result* of such standard exists which will at all times guarantee *no* less than the *same measure of protection* afforded the miners of such mine by such standard. . . .

30 U.S.C. § 811(c) (emphasis added). As interpreted by the Assistant Secretary, this provision calls for a two-step analysis of any proposed modification. The first step, corresponding to section 101(c)'s "result" clause, requires the Assistant Secretary to find that the proposed alternative method will promote the same safety goals as the original standard with no less than the same degree of success. The second step, keyed to section 101(c)'s "same measure of protection" requirement, contemplates a more global inquiry into the net safety effect of the modification. Taking into account both advantages and disadvantages of the alternative method, including effects unrelated to the goals of the original standard, the Assistant Secretary must consider how the modification will affect *overall* mine safety. This court has already approved the Assistant Secretary's two-part test for section 101(c) modifications. *See Emerald II*, at 962–64.

We conclude that the Assistant Secretary failed to apply the second part of his own two-part standard in this case, and accordingly remand for further consideration. The Assistant Secretary did undertake the first inquiry mandated by section 101(c), considering whether SOCCO's "alternative method" would promote the specific goals of section 75.326. By itself, however, the Assistant Secretary's determination on this point—that the use of belt air for ventilation, combined with SOCCO's new CO monitoring system, would reduce the risks of belt entry fire at least roughly as effectively as the safety standard, *see Final Decision* at 9–12, *reprinted in* J.A. 236–39—is insufficient to support a modification under the test approved in *Emerald II*.

Instead, the Assistant Secretary must make an additional and distinct finding that, considering all of the effects of the proposed alternative method, both positive and negative, modification would achieve a net gain, or at least equivalence, in overall mine safety. *See Emerald II*, at 963; *Quarto*, at 343. At a minimum, this second step requires the Assistant Secretary to respond reasonably to serious Union concerns regarding the proposed modification, and to explain why the benefits of modification would outweigh or neutralize any potential adverse effects. *See Emerald II*, at 965.

The Assistant Secretary's decision here does not meet this standard. There is, for instance, only a passing and indirect reference to the Union's contention that, quite apart from its impact on fire prevention, the SOCCO proposal to use belt air for ventilation will increase the risk of black lung disease by increasing exposure to respirable dust. *See* Brief on Behalf of United Mine Workers of America at 11, *reprinted in* J.A. 142. The Assistant Secretary's response, asserting that increased air flow to the working face will dilute the concentration of respirable dust, *see* Final Decision at 10, *reprinted in* J.A. 237, fails to address the Union's concern that the air coming off the belt will itself carry the dangerous dust. Nor is there any evidence that the Secretary has engaged in the requisite balancing of positive against negative safety effects. Indeed, the Union has identified an array of possible disadvantages of the modification that the Assistant Secretary has not addressed at all. *See* Brief of Petitioner UMWA at 39–42.

It may well be the case that modification of section 75.326 at the Martinka No. 1 Mine will lead to an overall safety gain, or at least to the retention of existing safety levels. Under *Emerald II*, however, the Assistant Secretary is required to make that determination explicitly and on the record. Because he has failed to do so here, we remand for reconsideration. On remand, the Assistant Secretary must perform the second step of his own test for modification, providing reasoned analysis on the global safety effects of the SOCCO's proposal and considering the detrimental effects cited by UMWA.

## B.

Two additional deficiencies in the decisionmaking process will require the Assistant Secretary's attention on remand. The first relates to the SOCCO proposal for removal of "stoppings" separating belt from track entries. The Assistant Secretary determined that he need not consider this proposal in the modification proceeding, as section 75.326 does not mandate separation of belt and track entries. *See Final Decision* at 13–14, *reprinted in* J.A. 240–41. This conclusion is erroneous. It is undisputed that the track entry at the Martinka No. 1 Mine also functions as an intake entry. *See* Brief for the Secretary of Labor at 31. Therefore, section 75.326, requiring separation of belt and intake entries, applies by its terms to the SOCCO proposal. On remand, the Assistant Secretary must decide whether removal of the stoppings separating the entries in question is a permissible modification of section 75.326.[1]

Finally, the Assistant Secretary must clarify his citation to the ongoing difficulties experienced by SOCCO in attempting compliance with the provisions of section 75.326. Apparently, the Assistant Secretary relied to some indeterminate extent on "the problems currently encountered at the Martinka No. 1 Mine in complying with section 75.326" as "further support for the granting of the petition." *See Final Decision* at 13, *reprinted in* J.A. 240. Because the Assistant Secretary provided no justification for his consideration of noncompliance or ineffective compliance as grounds for exemption, we are left without any clear sense of the Assistant Secretary's intentions and troubled by the possible implications of his reference.

From the sparse text of the decision itself, it could be inferred that the Assistant Secretary meant to suggest that section 75.326 is generally unworkable, and compliance impossible at any mine. At oral argument, however, the attorney for the Secretary of Labor disclaimed any such argument on the part of the agency, eliminating this possibility. Alternatively, the Assistant Secretary may have referred to SOCCO's noncompliance only as a make-weight, without affording it decisional significance. If this is the case, then the Assistant Secretary should simply delete this rationale from his decision on remand.

What concerns us is the possibility that the Assistant Secretary intended to suggest a sort of "good faith" standard, under which good faith efforts to comply with safety regulations would be sufficient even where full compliance is entirely feasible. We note here only that any such view seems patently inconsistent with the Mine Safety Act, which makes no allowance for failed compliance efforts. If the Assistant Secretary merely meant to say that circumstances peculiar to the Martinka No. 1 Mine render compliance impossible *at that mine only* and, thus, justify a mine-specific modification, then he should articulate his reasoning on remand. In any case, the Assistant Secretary must, upon reconsideration, either omit or clearly explain his reliance on past noncompliance as support for SOCCO's petition for modification.

## C.

In conclusion, we hold that the decision of the Assistant Secretary shows a lack of reasoned decisionmaking on three separate points, and remand for further consideration of these issues. We decline, however, to vacate the Assistant Secretary's order pending remand proceedings. SOCCO has already implemented the terms of the modification granted by the Assistant Secretary. Moreover, the deficiencies we find in the Assistant Secretary's order appear to go to the adequacy of his stated explanation, rather than to the merits of the decision itself. Under these circumstances, we have in the past allowed section 101(c) modification orders to remain in place on remand, *see Quarto*, at 346; *Emerald II*, at 966–67, and we see no reason to depart from that practice in this case. But, as in

---

1. Though the dual nature of the entry at issue does not render section 75.326 inapplicable, *contra* Brief for the Secretary of Labor at 31, it may be relevant to the Assistant Secretary's determination whether modification of the regulation is appropriate.

*Emerald II,* we caution that the court will "reconsider vacating the order ... upon a showing that the Assistant Secretary [is] not proceeding with reasonable diligence on remand." *See* 920 F.2d at 967.

### III. CONCLUSION

For the reasons set forth above, we find that the Assistant Secretary has not adequately justified his decision to grant SOC-CO's petition for modification. Therefore, though we leave the decision in place, we remand for further consideration consistent with this opinion.

*So ordered.*